THE MINISTER OF THE INTERIOR, SAMUEL G. WILDER, *vs.* HENRY BRADLEY AND HENRY MACFARLANE.

APPEAL FROM THE POLICE JUSTICE OF HONOLULU.

THE CONVICTION OF A PERSON holding a retail liquor license, of the offense of smuggling opium, is not a "contribution to the violation of a (any) law of this Kingdom," as contemplated and intended to be covered by the terms of the licensee's bond, it not being shown that the licensee made his business contribute towards the violation of any law.

Opinion of the Court by McCULLY, J.

The defendant Bradley holds a retail liquor license, under which he keeps the "Keystone Saloon," on the corner of Fort and King streets, in Honolulu. The other defendant is the surety on the bond for a thousand dollars, which is required from the licensee before issuing the license. The defendant Bradley having been convicted of the offense of smuggling opium, the Attorney General in this action prosecutes for the forfeiture of the license and the recovery of the penalty of the

Minister of the Interior *v.* Henry Bradley and Henry Macfarlane.

bond upon this clause in the condition: " Now, therefore, if during the continuance of this license the said Henry Bradley shall not contribute to the violation of any of the laws of this Kingdom, nor violate any of the conditions of his license, then this obligation shall be void."

The Attorney General claims that the conviction of Bradley of the violation of any law of this Kingdom is cause for the recovery of the penalty of the bond and forfeiture of the license. He claims that, for instance, if the licensee should violate the law of the Kingdom respecting furious riding, shooting plover out of season, storing kerosene in larger quantities than the statute allows, the bond given in connection with a license to retail liquor on certain designated premises is recoverable against him and against his surety. If such is the plain meaning of the statute when interpreted by legal and constitutional rules, we shall not hesitate to declare and enforce it.

The Attorney General cites from the bond in the statutes of 1846, which preceded the bond now in use, which provides, "if he shall not contribute by such retailing to any violation of the laws of the Kingdom," and argues from the omission of the words " by such retailing " from the later bond, that the Legislature has shown its intention not to limit causes of forfeiture to violations of law by the retailing of liquor, but to make all violations of statutes of the Kingdom causes of forfeiture, wherever committed, and without respect to a connection with the sale of liquor.

The argument from the omission of the limiting phrase has force, and in our opinion the existing statute is modified somewhat by it, as we shall remark hereafter.

It will be evident by examination of the terms of the license and the bond, that the bond is given to provide for the careful conduct of the business of selling liquor within the various provisions of the laws. It is a business which tends towards the violation of the public peace and of public and private

morality, and it is therefore restricted as the sale of other merchandise is not. Some of the modes by which a retail liquor saloon might promote a violation of law and the public peace are specifically mentioned in the license and bond, such as the assembling of native women or girls in the building or on the premises, and gaming of all descriptions. And there are also statutes in terms prescribing regulations to retail liquor dealers. The bond is the assurance by a penalty upon the licensee and some other and responsible person, that the business of this saloon will be conducted legally with respect to such provisions of law as are specified, and generally with respect to all the statute laws of the Kingdom.

In view of the context of the license law, it cannot be held that this is the bond of the principal and surety for the general legal conduct of the licensee, irrespective of the business, so that in all parts of the Kingdom where he might happen to be during the year of his license, he would be held and his surety be held with him under a penalty in addition to the penalty prescribed for any specific offense of which he might be convicted.

We consider the words " contribute to the violation of any law " to have their own appropriate force, and that they are not equivalent to " be convicted of the violation of any law."

To illustrate what might be a violation of law by the aid of the privileges granted by the license, let us take the offense of smuggling brandy. The possession of casks of brandy would not be a suspicious circumstance against a person holding a liquor license. A dealer may safely receive and keep in his premises and dispose of the liquor which he has smuggled or received from a confederate smuggler, and so his license facilitates and contributes to a violation of law. Although the phrase " by such retailing " has been stricken out, and so it is not necessary to prove that the retailing contributed to the offense, the general provision and intent of the law remain, that the licensee shall not contribute the aid and operation of

his business to the violation of any law. It has not been shown that a liquor seller has any facilities for dealing in opium. If a case should occur where it was shown that the smuggling or sale or use of opium, either smoked or drank as laudanum, was covered or aided by a saloon license, we might hold that the penalties here claimed as for a contribution to the violation of law would then be due.

The judgment of the Police Court is set aside and judgment here entered for the defendants.

Attorney General Preston for the plaintiff.

J. M. Davidson for the defendants.